IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES T. CONATY,                    §
                                    §
                   Plaintiff,       §
                                    §   Civil Action No. 3:07-CV-1313-D
VS.                                 §
                                    §
BROCADE COMMUNICATION               §
SYSTEMS, INC., f/k/a McDATA         §
CORPORATION,                        §
                                    §
                   Defendant.       §

MEMORANDUM OPINION
AND ORDER

     Plaintiff James T. Conaty ("Conaty") alleges that McData
Corporation, a predecessor of defendant Brocade Communication
Systems, Inc. ("Brocade") ("McData," unless the context otherwise
requires),[1] discharged him because of his age, in violation of the
Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.
§ 621 *et seq.*, and Texas law that proscribes age discrimination,
Tex. Labor Code Ann. §§ 21.001-21.556 (Vernon 2006).  McData moves
for summary judgment.  Concluding that a reasonable jury could not
find in Conaty's favor, the court grants McData's motion and
dismisses this suit with prejudice.

_____

     [1]Because Conaty was employed by McData at all times relevant
to his allegations, and all relevant actions were taken by McData,
the court will refer to the defendant as "McData" instead of
"Brocade" in analyzing Conaty's claims, unless the context
otherwise requires.

I

McData discharged Conaty on May 18, 2006.[2]  At the time of his discharge, Conaty was 62 years old and had been employed by McData and its predecessors as a sales representative for 24 years.  His most recent title was "Account Executive" ("AE"), and his primary responsibility was selling data center networking services.

McData acquired Computer Network Technology ("CNT"), for whom Conaty had worked, in the summer of 2005.  Following the merger, Conaty began reporting to Kris King ("King"), the Regional Sales Director for the South Region of McData.  King worked out of Tulsa, Oklahoma, while Conaty worked out of Dallas and covered the North Texas/Oklahoma territory.  As a result of the merger, accounts were reorganized among the AEs, including Conaty, and their sales quotas were raised.  Conaty failed to meet his sales quota for the 2005 fiscal year, achieving approximately 55%.

Around the first of February 2006, King announced that he would be leaving McData.  Before leaving McData in early March, he prepared 2005 performance reviews for the AEs in the South Region. King gave Conaty the lowest possible rating: "improvement needed to achieve standards."  King's review included the following comments:

---

[2]The court recounts the evidence in a light favorable to Conaty as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *E.g.*, *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

> [Conaty's] long-term relationships, while
> strong, are also somewhat a weakness, in that
> he doesn't appear to move outside his circle
> of customers to expand his breadth in an
> account. Seems to achieve a comfort level,
> and then not go beyond into other areas of the
> business. In his specific territory, he will
> need to demonstrate a much more aggressive
> hunting style in order to grow his business.
> In order to be successful in his current role,
> [Conaty] needs to expand his account base
> through new account sales.

D. App. 16. He also noted that Conaty "needs better grasp of the
tools to do the job of managing the business from a forecasting
perspective. Needs to embrace the hunter mentality that is
required for his territory." *Id.* at 15.

Following King's announcement that he would be leaving, McData
promoted Bryan Couzens ("Couzens"), who was an AE, to replace King
as the Regional Sales Director of the South Region. Couzens, who
was 40 years old at the time, sought an AE to take over his former
territory, which consisted of the North Texas/Arkansas area, and
Conaty approached Couzens in February about taking over the
territory. Couzens allegedly responded, "No, I need someone young,
dynamic, who knows the territory, knows the accounts, and can hit
the street running." P. App. 5. He subsequently hired Jeff
Bennett ("Bennett"), age 42, to take over the territory.

After meeting with Conaty concerning his low performance
review and conferring with McData human resources representative
Peter Whittle ("Whittle"), Couzens decided to place Conaty on a
performance improvement plan ("PIP"), which they referred to as a

Territory Execution Plan.   Couzens emailed Conaty concerning the PIP on March 23, 2006, and they met concerning the details on March 28.

The PIP specified certain actions that Conaty should take during the ensuing 60 days.[3]   The actions included preparing a high-level territory summary, visiting each account, identifying the decisionmakers in each account, meeting with the AEs for the Original Equipment Manufacturers ("business partners") of each account, and making at least ten face-to-face meetings per week with customers and/or business partners.[4]   As a result of these activities, Conaty was expected to identify two new "ROC" opportunities, two new "Telco" opportunities, and two new "third party" opportunities, and develop a detailed account plan for his top two customers, all by the end of the quarter.[5]

On May 8 Couzens and Tom Stahl ("Stahl"), the manager for the technical support team that worked with AEs, met with Conaty to discuss his progress on the PIP.   Following this meeting——allegedly

---

[3]Conaty asserts that, although the PIP's timeframe was technically 60 days, it actually only gave him 30 days because weekends and a scheduled, week-long personal vacation were included in this period.

[4]Under the PIP, Conaty was to enter all of these appointments in his calendar, with Couzens invited as "optional."

[5]The parties do not elaborate on what "ROC," "Telco," and "third party" opportunities are, but this does not affect the court's decision, because these PIP requirements do not impact the court's analysis.

while Conaty was on a pre-planned vacation——Couzens made the decision to terminate Conaty's employment. Couzens and Whittle met with Conaty on May 18, 2006 and informed him of his termination, citing his failure to comply with the PIP. It is undisputed that Conaty had not met all the PIP requirements at this time, including the requirement that he have ten face-to-face meetings per week with customers and/or business partners. It is also undisputed that 60 days had not yet elapsed since the commencement of the PIP.

Immediately following Conaty's termination, Couzens made a request to backfill Conaty's AE position. Couzens interviewed between eight and twelve candidates and attempted to hire two of them. The first was not recommended by a manager above Couzens, and the other did not accept McData's employment offer. Before Couzens could hire a replacement for Conaty, a hiring freeze was initiated in anticipation of Brocade's acquisition of McData. During the hiring freeze, Couzens distributed Conaty's accounts to existing AEs. In January 2007, when the freeze was lifted, the merger with Brocade and the ensuing reorganization eliminated the need to fill Conaty's position.

Conaty filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was given a negative evaluation, placed on a PIP, and discharged because of his age. After receiving a right to sue letter, Conaty filed this lawsuit alleging age discrimination claims under the

ADEA and Texas law.[6]

## II

### A

McData moves for summary judgment dismissing Conaty's claims. Because McData will not have the burden of proof on Conaty's claims at trial, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once McData does so, Conaty must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Conaty's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conaty's failure to produce proof as to any essential element renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Conaty fails to meet this burden.

---

[6]Although Conaty's complaint and EEOC charge cite his performance review and his placement on a PIP as discriminatory actions, he makes it clear in his response brief that these actions are only evidence of discrimination, and that his only actionable age discrimination claim is based on his discharge. Additionally, although Conaty's response refers in passing to discrimination *and retaliation* claims, Conaty has not alleged retaliation in his complaint or EEOC charge, nor has he presented evidence of retaliation in his briefing. The court, like the parties, treats Conaty's claims as based solely on his discharge.

*Little*, 37 F.3d at 1076.

B

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Texas law also proscribes age discrimination, *see* Tex. Labor Code Ann. § 21.051(1), and its proscription is substantively identical to the ADEA's. *See McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461-62 (5th Cir. 2005). Because the same analysis applies to Conaty's ADEA and Texas law claims, the court will consider them together under the ADEA evidentiary framework.

To prove age discrimination, Conaty may rely on direct or circumstantial evidence. *See, e.g., Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence."). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (Fitzwater, J.) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). "In

- 7 -

other words, to qualify as direct evidence of discrimination, an employer's comment 'must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).  If Conaty produces direct evidence that discriminatory animus played a part in the decision to discharge him, the burden of persuasion shifts to McData, who must prove that Conaty would have been discharged regardless of the discriminatory animus.  *See Sandstad*, 309 F.3d at 896.  Direct evidence of discrimination is rare, however.  *See, e.g.*, *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (Fitzwater, J.) (sex discrimination case) (stating that because direct evidence is rare in discrimination cases, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion).  If Conaty lacks direct evidence of discrimination, he can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

III

Conaty contends that he has adduced direct evidence of age discrimination.   He argues that Couzens' response to Conaty's request to take over his territory is direct evidence that Couzens discharged Conaty because of his age.[7]   When Conaty asked Couzens about taking over his territory, Couzens allegedly responded, "No, I need someone young, dynamic, who knows the territory, knows the accounts, and can hit the street running."   P. App. 5.

To constitute direct evidence, such a remark "must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." *Reilly v. TXU Corp.*, 271 Fed. Appx. 375, 379 (5th Cir. 2008) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).   In this case, the employment decision at issue is Conaty's discharge, not the prior decision not to allow Conaty to switch from his existing territory to Couzens' former territory. The sole employment action on which Conaty bases his age

---

[7]Conaty does not appear to contend that a comment allegedly made by McData's CEO, in which he introduced Conaty as a "seasoned veteran," is direct evidence of age discrimination.   Conaty mentions this comment in his deposition, but his summary judgment briefing does not refer to it.   In any event, this comment does not qualify as direct evidence of age discrimination because it does not prove the fact of discriminatory animus without drawing an inference.   *See Sandstad*, 309 F.3d at 897.

discrimination claim is his discharge.  Couzens' remark satisfies the first and third factors: it is related to age and was made by Couzens, who had authority over the decision to discharge Conaty. The court will assume *arguendo* that the remark, made approximately three months before Conaty's discharge, was proximate in time to the discharge.  Couzens' remark was not related, however, to the decision to discharge Conaty.  To conclude from Couzens' statement that age played a part in the decision to discharge Conaty, a jury would be required to infer, at a minimum, (1) that Couzens' need for someone young to take over his former territory indicated a need for a young AE in every territory, and (2) Couzens' desire to fill a job opening with someone young indicated a desire to terminate the employment of older AEs.  Because Couzens' comment cannot be linked to the decision to discharge Conaty without drawing several inferences, it is not direct evidence of discriminatory animus.  *See Sandstad*, 309 F.3d at 897 (holding, *inter alia*, that plan to promote younger managers to replace senior managers was not direct evidence of age-based animus related to plaintiff's termination, because such a conclusion required the inference that senior managers were to be terminated to make room for the younger managers).  Because Couzens' statement was not related to the decision to discharge Conaty, it is a stray remark and not direct evidence of age discrimination.

Conaty contends that *Jones v. Robinson Property Group, L.P.,*

427 F.3d 987 (5th Cir. 2005), supports the argument that Couzens' remark constitutes direct evidence of age discrimination. The court disagrees, concluding that *Jones* is distinguishable. The *Jones* plaintiff, an African-American, applied unsuccessfully for a job as a dealer at a casino. *Id.* at 991. He offered evidence that the manager who had authority to hire him often made racially derogatory remarks and had made several comments demonstrating a racial animus in the hiring of employees.[8] *Id.* at 993. The *Jones* panel held that these remarks constituted direct evidence that race played a role in hiring decisions. *Id.* Although the comments did not relate explicitly to the manager's decision not to hire the plaintiff, they did relate specifically to the manager's hiring decisions. By contrast, in the present case Couzens' single comment not only does not relate to the decision to discharge Conaty, it does not pertain to a discharge at all. It relates only to the specific decision of who would take over Couzens' former territory. Couzens' remark is not analogous to the remarks in *Jones* because several inferences are required in order to evince an age-based animus relating to the decision to discharge Conaty. Therefore, Conaty has not produced direct evidence of

_____

[8]The comments allegedly made by the manager (or his assistant) concerning hiring dealers included: "they hired who they wanted to hire and [they] were not going to hire a black person unless there were extenuating circumstances;" "good old white boys don't want blacks touching their cards in their face;" and "maybe I've been told not to hire too many blacks in the poker room." *Jones*, 427 F.3d at 993.

discrimination and must rely on circumstantial evidence.

IV

Because Conaty must rely on circumstantial evidence to prove discrimination, the court analyzes his claim under the "modified *McDonnell Douglas* approach." *Rachid*, 376 F.3d at 312. As modified, *McDonnell Douglas* consists of three stages. First, Conaty must establish a prima facie case of discrimination, which "creates a presumption that [McData] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to McData to articulate a legitimate, nondiscriminatory reason for discharging Conaty. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). McData's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West*, 330 F.3d at 385. Finally, if McData meets its production burden, then Conaty may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Conaty must "offer sufficient evidence to create a genuine issue of material fact . . . that [McData's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotation marks omitted). Under the mixed-motives alternative, Conaty must offer sufficient evidence to create a genuine issue of material fact "that [McData's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is

[Conaty's] protected characteristic[.]" *Id.* (internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

V

To establish a prima facie case of discriminatory discharge under the ADEA, Conaty must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309 (citations and internal quotation marks omitted). "[T]o establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985). The burden is not an onerous one. *See Burdine*, 450 U.S. at 253.

Conaty has clearly satisfied the first three elements: he was discharged, he had 24 years of sales experience in the industry and was qualified to be an AE, and he was 62 years old.[9]   McData

---

[9]Under the ADEA, the protected class includes persons 40 years of age and older. *See* 29 U.S.C. § 631(a); *Machinchick*, 398 F.3d at 352 n.22.

- 13 -

maintains, however, that Conaty cannot establish the fourth element of the prima facie case because he was neither replaced nor otherwise discharged because of his age. Conaty contends that, although he was technically not replaced, Couzens attempted to replace him with someone younger. He asserts that Couzens immediately put in a request to backfill Conaty's position, interviewed between eight and twelve candidates, and attempted but failed to hire two individuals who were younger than Conaty before the hiring freeze foiled his plans. Conaty argues that Couzens' intent and efforts to replace Conaty with a younger employee are more than sufficient to meet the fourth element of the prima facie case.[10] Alternatively, Conaty maintains that the following evidence demonstrates that he was otherwise discharged because of his age: Couzens' response to Conaty's request to take over his former territory, Couzens' hiring of a younger employee (Bennett) to take over his former territory, and Couzens' favorable treatment of a younger employee, Lars Gustafson ("Gustafson"). Because the court addresses all of these arguments in its pretext analysis, *see infra* at § VII, it will assume *arguendo* that Conaty has established a prima facie case of age discrimination.

---

[10]McData responds that Conaty provides no evidence that the two individuals Couzens tried to hire were younger than Conaty. The only "evidence" Conaty adduces regarding their ages is Couzens' testimony that they appeared to be between 35 and 50 years of age.

VI

The burden now shifts to McData to articulate a legitimate, nondiscriminatory reason for discharging Conaty. *St. Mary's Honor Ctr.*, 509 U.S. at 506-07.  McData has satisfied its burden.  It asserts that it discharged Conaty because he did not comply with the requirements of the PIP.  Both Couzens and Stahl testified that Conaty was not performing the sales activities that were expected of him under the PIP and had demonstrated inadequate progress in completing the PIP.  Indeed, it is undisputed that Conaty failed to comply with all the requirements of the PIP.[11]  Noncompliance with a PIP is a legitimate, nondiscriminatory reason for terminating an employee.  *See, e.g.*, *Young v. CompUSA*, 2004 WL 992577, at *4 (N.D. Tex. Apr. 30, 2004) (Solis, J.) (holding that noncompliance with terms of PIP is legitimate, nondiscriminatory reason for terminating employee).[12]  And as the court addresses below, McData also had a legitimate, nondiscriminatory reason for placing Conaty on the PIP in the first place.

---

[11]Although the parties dispute the extent of Conaty's failure to comply, at the very least, he did not have ten face-to-face meetings with customers and/or business partners each week.

[12]To the extent Conaty contends that McData's proffered reason is pretextual, the court addresses these arguments in the pretext section of its analysis.  McData's burden is one of production, not proof, and involves no credibility assessments.  The court merely determines at this step whether McData has produced evidence of a legitimate, nondiscriminatory reason.

- 15 -

VII

The court now considers whether Conaty has adduced sufficient evidence of pretext to present a genuine issue of material fact.

A

To show pretext, Conaty must "offer sufficient evidence to create a genuine issue of material fact . . . that [McData's] reason is not true, but is instead a pretext for discrimination." *Rachid*, 376 F.3d at 312 (internal quotation marks omitted). Conaty is required to provide actual evidence, and his subjective belief that he was discriminated against is insufficient. *See Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value.").

McData asserts that it discharged Conaty because he failed to comply with the requirements of the PIP. Conaty does not dispute that he failed to comply with all the requirements of the PIP, but he argues that a reasonable jury could still infer that his noncompliance was not McData's real reason for discharging him. In attempting to show pretext, Conaty makes a variety of arguments. Much of the arguments' substance questions the fairness and wisdom underlying his performance review, the terms of the PIP, and the decision to discharge him. These arguments generally do not constitute evidence that can be relied upon to show pretext or a discriminatory motive. "The ADEA was not intended to be a vehicle

- 16 -

for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citing *Thornbrough*, 760 F.2d at 647; *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)). "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Id.* at 1508 (citations omitted). Conaty has not adduced evidence that would enable a reasonable jury to find that McData's reason for discharging him was pretextual or motivated by his age.

B

Conaty first contends that McData's favorable treatment of Gustafson shows that the proffered reason for terminating him was pretextual. Gustafson was also an AE in the South Region of McData, and he covered the Houston/Austin/San Antonio area. Gustafson was hired as an AE in May 2004, making 2005 his first full year as an AE. He was 53 years old at the time of Conaty's discharge, i.e., nine years younger than Conaty.

"In discrimination cases, [this court] compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." *Sandstad*, 309 F.3d at 901 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507 (5th Cir. 2001)).

- 17 -

"[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Conaty attempts to compare himself to Gustafson on the basis that they both failed to meet their respective sales quotas for the 2005 fiscal year. This fact does not make Gustafson a proper comparator, however, because neither Conaty's discharge nor any of the other employment decisions at issue in this case was based solely on Conaty's failure to meet his 2005 sales quota. As discussed below, Gustafson's conduct was not "nearly identical" to Conaty's; thus his treatment cannot be compared to Conaty's.

Conaty contends that discharging him based on noncompliance with the PIP is not a legitimate, nondiscriminatory reason because the decision to place him on the PIP in the first place was motivated by discriminatory animus. According to Conaty, the animus is evidenced by the fact that Couzens placed him, and not Gustafson, on a PIP. The primary reason Couzens gave for placing Conaty on a PIP, however, is that King (the departing Regional Sales Director for the South Region) gave him the lowest possible performance rating: "improvement needed to achieve standards." Although Gustafson also received a lower rating than did the other AEs ("partially achieved standards"), it was a higher rating than

Conaty received, and Gustafson met at least some standards, whereas Conaty needed improvement to achieve standards.

Additionally, the substance of Gustafson's performance review differed greatly from that of Conaty's.  In Gustafson's performance review, King commented: "Lars works extremely hard and has demonstrated resilience in approaching this challenging territory.  Maintains an excellent attitude with no whining.  Eager to please, easy to manage.  With more involvement and coaching, he will be successful in 2006.  Take a more aggressive approach in obtaining resources for your patch."  D. App. 19.  King also stated that "Lars is doing what we need done in re-establishing credibility and relationships in the South Texas Market.  Very strong work ethic and customer-first approach . . . .  Well positioned for success for 2006."  *Id.* at 18.

Conaty also argues that the performance review itself was neither legitimate nor nondiscriminatory because it was based on King's subjective assessment of the employees.  This argument fails for two reasons.  First, King's review of Conaty was based not only on his subjective assessment but also on Conaty's failure to meet his sales quota.  Second, legitimate, nondiscriminatory reasons *can* be based even on subjective assessments, provided "the employer articulates a clear and reasonably specific basis for its subjective assessment."  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).  In Conaty's performance review, King

- 19 -

articulated a clear and reasonable basis for his assessment. *See supra* § I.

Conaty contends that it was inappropriate for Couzens to rely primarily on King's performance reviews in deciding to place Conaty on a PIP. Conaty cites evidence that Couzens did not take into account Conaty's history of solid performance and meeting quotas, the fact that he had recently lost large accounts, and the fact that McData's partner-driven sales method was unfamiliar to him. Although it could be argued that Couzens should have taken these factors into account before placing Conaty on a PIP, the wisdom of Couzens' decisions is not at issue, only the motivation behind the decisions. *See Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones."). And a reasonable jury could not find, based on Couzens' reliance on King's performance reviews, that Couzens harbored an improper motive in placing Conaty on a PIP.

Conaty also takes issue with King's reviews of both Conaty and Gustafson. He contends that King's characterization of his work is unwarranted. Specifically, he argues that King's perception that he restricted his calls to a small circle of customers and that he did not move out of his comfort zone to find new customers is inaccurate. But these are simply disagreements with King's assessment of his performance, and it is well established that a

disagreement over a performance assessment cannot create a genuine issue of material fact. *See Sandstad*, 309 F.3d at 899 ("Merely disputing [the employer's] assessment of his performance will not create an issue of fact."); *Little*, 924 F.2d at 97 ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."). Moreover, Conaty does not provide any evidence other than his subjective beliefs showing that King's assessment was inaccurate or that he was performing the sales activities that were expected of him. Finally, King completed his performance review of Conaty shortly before ending his own employment with McData, and there is no indication that King had any reason to downgrade, based on age, an employee who would be remaining with the company that King was leaving.

Conaty also argues that, because he outperformed Gustafson in 2005, King should not have rated Gustafson more highly, and that the review was inherently subjective. Conaty's contention that he outperformed Gustafson in 2005 is based on evidence showing that he achieved more sales revenue and a larger percentage of his sales quota for the 2005 fiscal year.[13] This does not draw into question, however, the legitimacy or motivation behind King's reviews.

---

[13]As McData points out, Gustafson actually achieved more sales revenue than Conaty in the second half of 2005, when King was managing the AEs.

Neither King nor anyone else at McData has stated that the performance reviews were based solely, or even primarily, on the AEs' sales numbers. In fact, King's reviews of both men focus much more on their work ethic and approach to sales activities than on their sales numbers. Although part of this assessment may be subjective, King clearly articulated the bases for the reviews, and a reasonable jury could not find that he had a discriminatory motive. The ADEA does not compromise an employer's ability to factor work ethic, attitude, and manageability into performance reviews and other employment decisions. *See, e.g.*, *Alvarado*, 492 F.3d at 616; *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation."). Gustafson received a higher performance rating for clearly articulated reasons, he was not placed on a PIP, and he certainly did not fail to comply with a PIP. His conduct was not "nearly identical" to Conaty's.[14] Accordingly, a reasonable jury could not find that McData's treatment of Gustafson raises a genuine issue of material fact concerning the veracity of McData's

---

[14]Because Gustafson's conduct was not "nearly identical" to Conaty's, it is also irrelevant that Couzens recommended that Gustafson's potential compensation plan be brought to the level of the other AEs' plans if he was able to achieve 80% of his sales quota.

reason for discharging Conaty.

C

Conaty contends that pretext can be inferred because the PIP was unattainable, and because McData intended Conaty to fail to comply.  His contention that the PIP was unattainable appears to rest on his assertion that it was impossible to meet with 23 customers and 42 business partners in the time he was given.[15] Conaty provides no evidence, however, that would enable a reasonable jury to find that it was unattainable or that McData believed that it was unattainable.  He merely offers his subjective belief that it was unattainable, which is insufficient to raise a fact issue.[16]  *See Little*, 924 F.2d at 96.  Moreover, even if a reasonable jury could find in retrospect that the PIP was unattainable, there is no evidence that Couzens or any other McData employee knew that it was unattainable when he imposed it on Conaty or when McData discharged him.  Notably, Conaty did not object to the PIP's requirements or complain that they were unattainable until after he was terminated.  And Conaty was not discharged because he failed to meet with all of the customers and business

---

[15]These are the numbers of customers and business partners with whom Conaty asserts he would have had to have met to comply with the PIP.  The PIP provided that Conaty should meet with each customer and the active business partners for each customer.

[16]Conaty is the only person who offers the opinion that the PIP was unattainable.  Couzens, Whittle, and Mark Goheen, Conaty's former supervisor, all testified that the PIP was reasonable.

partners within the PIP's 60-day timeframe. A reasonable jury could only find from the summary judgment evidence that he was terminated before the 60 days elapsed because he had consistently failed to comply with the PIP, including failing to conduct ten face-to-face meetings per week, and because McData found that his progress under the PIP was unacceptable.

In arguing that McData intended him to fail to comply with the PIP, Conaty contends that Couzens took several actions that hindered his ability to comply. Essentially, Conaty asks the court to second-guess all of Couzens' actions, an undertaking for which the ADEA was not intended. *See Bienkowski*, 851 F.2d at 1507-08. Conaty contends that Couzens assigned more accounts to Conaty several weeks before imposing the PIP, which increased the number of accounts he was obligated to contact. Conaty testified, however, that he had requested more accounts because he believed that part of the reason he did not meet his sales quota in 2005 was that he did not have enough accounts. Thus it would be unreasonable for the jury to infer that Couzens gave Conaty more accounts (which Conaty had in fact requested) in order to hinder his ability to comply with the PIP. Couzens also allegedly failed to give Conaty several documents that would have assisted him with the contact information for his accounts. Although Couzens testified that he did give Conaty the promised assistance and there is evidence that Conaty received the documents, the court will

- 24 -

assume for purposes of summary judgment that he did not.  Even when
assumed to be true, however, this assertion does not suggest that
Conaty was intended to fail the PIP or that McData's reason for
discharging him was pretextual.  There is no evidence that Couzens
purposely kept the documents from Conaty or that not receiving the
documents played a role in Conaty's noncompliance with the PIP.
Conaty next argues that Couzens included weekends and Conaty's
week-long vacation in the PIP's 60-day timeframe.  It is unclear
how this evinces pretext, unless it is proof that McData did not
intend to give Conaty sufficient time to improve his performance.
But a reasonable jury could not find that Conaty was discharged
because he failed to achieve all the PIP's requirements by the end
of the 60 days.  It could only find that he was terminated because
he was not complying with his weekly requirements and showed very
little progress, i.e., that the 60-day period was ultimately
irrelevant because he was not sufficiently progressing even during
the improvement period.

Conaty alleges that Couzens also disregarded nine face-to-face
meetings he had during one week of the PIP.  But it is undisputed
that these meetings were not entered into Couzens' calendar, as
required by the PIP.  It is also undisputed that Conaty failed to
have ten face-to-face meetings in the other weeks of the PIP.

Finally, Conaty complains that, under the PIP, he was required
to provide information to Couzens that Couzens could have retrieved

from a computer database.  Although Conaty may believe that Couzens should have retrieved this information himself, this belief does not evidence pretext.  *See id.*  In sum, a reasonable jury could not find that McData imposed the PIP on Conaty with the intention that he fail to comply.

                                    D

     Conaty next argues that McData's reasons for placing Conaty on a PIP have evolved.  This assertion, however, is simply inconsistent with the facts that a reasonable jury could find from the summary judgment evidence.  Couzens and McData have consistently stated that Conaty was placed on a PIP because he received the lowest performance rating for the 2005 fiscal year.

     Conaty argues that one of McData's interrogatory answers conflicts with this stated reason.  In response to an interrogatory that asked McData to state why it did not place Gustafson on a PIP, McData responded in part that "Couzens prioritized the performance issues in his territories by focusing on the lowest performer's issues first."  P. App. 213.  Conaty contends that, because Gustafson had lower sales numbers than he did, Gustafson was the "lowest performer," and McData did not clarify until later that the "lowest performer" was the employee with the lowest performance rating.  This assertion would not enable a reasonable jury to find that McData's reasons have evolved, and it in no way calls into question the veracity of McData's stated reason for terminating

                                  - 26 -

Conaty.

                                    E

     Conaty contends that McData's briefing "is replete with
blatantly false assertions," and that "a jury could reasonably
infer that [McData] is dissembling to cover up its discriminatory
conduct." P. Br. 34. Conaty then lists petty disagreements that
he has with McData's arguments and characterization of the case.[17]
Because Conaty's allegations do not evidence blatantly false
assertions from which a reasonable jury could infer that McData was
dissembling, the court need not address them specifically.

                                    F

     Conaty briefly argues that Couzens' efforts to fill his
position with a younger employee evince pretext. Couzens
apparently interviewed between eight and twelve candidates and

---

        [17]For example, Conaty asserts:

          Defendant's claim that King did not know
          Conaty's age and was not influenced by age in
          giving performance rating is at best
          misleading and borders on disingenuous. King
          could see with his own eyes that in the South
          Region, Conaty was the only white-haired sales
          representative in the region and the age
          difference between Conaty in his 60s and King,
          in his early 40s (as were most of the other
          sales representatives) was readily apparent.

P. Br. 38 (citations omitted). In addition to failing to present
a "blatantly false assertion" made by McData, Conaty's argument in
this paragraph is not supported by the evidence in the summary
judgment record. Conaty has not cited to evidence showing that he
had white hair or that most of the other AEs in the South Region
were in their early 40s.

attempted to hire two of them.  One candidate was not approved by management, and the other did not accept McData's offer.  The only evidence of the two candidates' ages that Conaty presents is Couzens' estimate that they were between 35 and 50.  Although this may be sufficient to support a prima facie case of age discrimination, this proof is insufficient to rebut McData's legitimate, nondiscriminatory reason for terminating Conaty.

G

Finally, Conaty asserts that Couzens' statement——"No, I need someone young, dynamic, who knows the territory, knows the accounts, and can hit the street running." P. App. 5——is evidence of pretext.  As the court has explained, because this comment did not relate to the decision to discharge Conaty, it is a stray remark and does not qualify as direct evidence of discrimination. It may still be probative of discriminatory intent, however, if it is accompanied by other evidence of pretext.  *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003); *Auguster*, 249 F.3d at 405.

In this case, Conaty has not adduced proof that calls into question the veracity of McData's decision to discharge Conaty. "Stray remarks are insufficient to enable a claim to survive summary judgment when a plaintiff fails to produce substantial evidence of pretext." *Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.) (citing *Auguster*,

249 F.3d at 404-05), *aff'd*, 72 Fed. Appx. 112 (5th Cir. 2003). Because Couzens' remark neither relates to the decision to discharge Conaty nor to the decision to place him on a PIP, and it is unaccompanied by substantial evidence of pretext, it is insufficient to rebut McData's legitimate, nondiscriminatory reasons for terminating Conaty's employment.

Conaty also asserts that King's comments in his review of Conaty demonstrate age-based animus, specifically the comments that he "[s]eems to achieve a comfort level, and then not go beyond into other areas of the business," and that "[i]n his specific territory, he will need to demonstrate a much more aggressive hunting style in order to grow his business." D. App. 16. These comments do not explicitly refer to Conaty's age, and Conaty does not attempt to explain how they suggest age-based bias or animus. Moreover, Conaty's reliance on them could be seen as his own form of age-based stereotyping. Why should an employer who refers to his employee's comfort level, his failure to venture into other areas of business, or his lack of aggressiveness be seen as saying something (particularly something negative) about his employee's *age*? To assume that he is saying something age related presupposes that these are characteristics commonly found in older people. Finally, the statements were made by King, who was not even employed by McData when Conaty was placed on the PIP and then discharged. In light of the legitimate, nondiscriminatory reasons

for the actions leading to Conaty's discharge, a reasonable jury
could not infer from any of King's or Couzens' comments that the
reasons were pretextual.

H

The court concludes that Conaty has failed to introduce
evidence that would permit a reasonable jury to find that McData's
legitimate, nondiscriminatory reason for discharging him was
pretextual.   McData not only has produced evidence that it
discharged Conaty for a legitimate, nondiscriminatory reason, but
it has also produced evidence of legitimate, nondiscriminatory
reasons for all of the actions leading to his discharge.   Conaty
admittedly failed to achieve his sales quota in 2005, and he
received the lowest possible performance rating from King.   Based
on his 2005 performance review, Couzens placed Conaty on a PIP.   It
is undisputed that Conaty failed to comply with all the terms of
the PIP.  McData then discharged Conaty for failure to comply with
the PIP.  Despite his various arguments, Conaty has not presented
evidence that would enable a reasonable jury to find that he was
discharged for a reason other than his failure to comply with the
PIP.

VIII

After presenting his pretext arguments, Conaty states that all
the evidence offered to show pretext also shows that his age was
one of the factors in the decision to discharge him.

- 30 -

Under the mixed-motives alternative, Conaty must offer sufficient evidence to create a genuine issue of material fact "that [McData's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Conaty's] protected characteristic." *Rachid*, 376 F.3d at 312 (internal quotation marks omitted). The court concludes that the evidence discussed in its pretext analysis would not permit a reasonable jury to find that Conaty's age was a motivating factor in McData's decision to discharge him.

Because Conaty has failed to introduce evidence that would permit a reasonable jury to find that McData's legitimate, nondiscriminatory reason for discharging him was either pretextual or partly motivated by his age, McData is entitled to summary judgment dismissing Conaty's age discrimination claims.

IX

The court now briefly addresses four additional motions pending in this case. In light of the court's conclusion that McData is entitled to summary judgment dismissing Conaty's claims, the court denies all of these motions as moot.

On September 2, 2008 Conaty moved for partial summary judgment dismissing four affirmative defenses on which McData relies. Because the court has not considered any of McData's affirmative defenses in concluding that it is entitled to summary judgment, the court denies Conaty's motion for partial summary judgment as moot.

On September 2, 2008 Conaty also filed a motion to exclude the testimony and opinions of Gerald Whitney Smith ("Smith"). Because the court has not considered any of Smith's testimony in granting summary judgment in favor of McData, it denies this motion as moot.

On October 14, 2008 McData filed a motion to strike Conaty's summary judgment evidence. Specifically, McData moves to strike several portions of Conaty's affidavit that allegedly contradict his deposition testimony and to strike two documents that Conaty allegedly failed to produce during discovery. Because the court has granted summary judgment in favor of McData notwithstanding the evidence to which McData has objected, the court denies the motion as moot.

Conaty also filed on October 14, 2008 objections to, and motion to strike, portions of McData's summary judgment evidence. Conaty asks the court to strike the vast majority of Couzens' and King's affidavits, arguing that most of the statements lack foundation, conflict with deposition testimony, or are self-serving, conclusory, hearsay, and/or irrelevant. He also argues that documents and portions of his own deposition testimony concerning old performance reviews are hearsay and irrelevant.[18] The court need not address the merits of these objections because it has not relied on any of the evidence to which Conaty has

---

[18]The performance reviews to which Conaty objects do not include his 2005 performance review.

objected in granting summary judgment.[19]   Summary judgment is appropriate because Conaty, as the plaintiff, has not produced evidence sufficient to allow a reasonable jury to return a verdict in his favor.  *See Anderson*, 477 U.S. at 248.   The court has recounted the evidence in a light favorable to Conaty as the summary judgment nonmovant and has drawn all reasonable inferences in his favor.  *E.g.*, *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  The conclusion that McData is entitled to summary judgment is based on the insufficiency of the evidence Conaty has produced.  Because the court has not relied on the evidence to which Conaty has objected, the court denies Conaty's motion as moot.

---

[19]Some of the portions of Couzens' and King's affidavits to which Conaty objects essentially overlap with evidence to which Conaty has not objected, including evidence found in the depositions of Conaty, Couzens, and King.

\*      \*      \*

Conaty has failed to show that there is a genuine issue of material fact concerning his age discrimination claims. Accordingly, the court grants McData's motion for summary judgment and, by judgment filed today, dismisses this action with prejudice.

**SO ORDERED.**

April 7, 2009.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE

– 34 –